**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| NAZARETH PLAZA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:_____ |
| | ) | |
| GAF MATERIALS, LLC; | ) | Removed from the |
| LOWE'S HOME IMPROVEMENT, LLC | ) | Superior Court of Cobb County |
| (a/k/a LOWE'S HOME CENTERS LLC) | ) | Civil Action File No.: 22102247 |
| | | |
| Defendants. | | |

## <u>NOTICE OF REMOVAL</u>

Defendant GAF Materials, LLC ("GAF"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby removes this civil action from the Superior Court of Cobb County, Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division.

1.

On April 1, 2022, Plaintiff filed this action in the Superior Court of Cobb County, Georgia, against GAF and Defendant Lowe's Home Improvement, LLC (a/k/a Lowe's Home Centers LLC) ("Lowe's").

2.

The Superior Court of Cobb County designated this action as Civil Action File Number 22102247.  Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in the case are attached hereto as composite **Exhibit "A."**

3.

In its Complaint for Damages (the "Complaint"),[1] Plaintiff alleges it is seeking damages arising from defective roofing materials designed, manufactured, marketed, advertised, and sold by Defendants.[2]

4.

GAF first received a copy of the Summons and Complaint on April 13, 2022, when it was served on its registered agent Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.[3]  Thus, pursuant to 28 U.S.C. § 1446(b)(1), the removal of this action to this Court is timely because this Notice of Removal is filed within 30 days after the receipt by GAF, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which this action is based.

---

[1] Attached hereto as a portion of **Ex. "A."**
[2] Id. at ¶ 1.
[3] See Notice of Service of Process (attached hereto as a portion of **Ex. "A."**).

5.

Pursuant to 28 U.S.C. §§ 1441(a) and 90(a)(2), the United States District Court for the Northern District of Georgia, Atlanta Division, is the proper venue to which to remove this action because it is the federal district court and division embracing the state court in which Plaintiff originally filed this action.

6.

On June 15, 2020, legal counsel for Plaintiff sent a letter[4] to GAF in which it calculated its damages incurred as a result of the allegedly defective roofing materials as $101,738.42:

> Sufficient evidence exists to show that GAF failed to manufacture the [roofing materials] in a reasonable manner.  As a result [Plaintiff] wasted not just the money necessary to purchase the [roofing materials], but also the money used to pay the labor to install the [roofing materials].  The cost to [Plaintiff] for the labor and materials totaled $89,938.42.  Thereafter, [Plaintiff] had to pay an expert…to examine the [roofing materials] at a cost of $5,000.00.

> In addition to these costs, [Plaintiff] has incurred costs for both out-of-pocket expenses in the amount of $6,800.00.  In total, [Plaintiff] demands payment in the amount of $101,738.42.[5]

In the Complaint, Plaintiff demands judgment against Defendants for, among other categories of damages, "compensatory damages, and all other damages allowable under the law, sustained by Plaintiff" as well as "payment of costs of suit herein

---

[4] Attached hereto as **Exhibit "B."**
[5] Id. at p. 3.

incurred," "both pre-judgment and post-judgment interest at the maximum rate allowable at law on any amounts awarded," and "expenses of litigation."[6]  Thus, the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.[7]

7.

Plaintiff alleges it is a Georgia limited liability corporation and is a citizen and resident of the State of Georgia, with its principal place of business located in Georgia.[8]  Plaintiff correctly alleges that GAF is a foreign limited liability company with its principal place of business located in Parsippany, New Jersey.[9] Upon information and belief, Plaintiff also correctly alleges that Lowe's is a foreign limited liability company with its principal place of business located in Mooresville, North Carolina.[10]  Thus, pursuant to 28 U.S.C. 1332, this action involves a matter between citizens of different States.

---

[6] Complaint at PRAYER FOR RELIEF clause following ¶ 157.

[7] See Mick v. De Vilbiss Air Power Co., 2010 WL 5140849, *2 (M.D. Fla. 2010) (presuit demand letter sufficient evidence of the amount in controversy for removal purposes where it contains "sufficient facts" supporting the amount of the monetary demand).

[8] Complaint at ¶ 9.

[9] See id. at ¶ 10.

[10] See id.

8.

Pursuant to 28 U.S.C. § 1446(d), GAF is contemporaneously serving a copy of this Notice of Removal upon all parties and filing a copy of this Notice of Removal in the Superior Court of Cobb Count.

Respectfully submitted this 13th day of May, 2022.

STITES & HARBISON, PLLC

By:    /s/ *William D. Newcomb*
        WILLIAM D. NEWCOMB
        Georgia Bar No. 148484
        JEFFREY C. HOFFMEYER
        Georgia Bar No. 132231
        *Attorneys for Defendant*
        *GAF Materials, LLC*

303 Peachtree Street, N.E., Suite 2800
Atlanta, Georgia 30308
(404) 739-8873

**EXHIBIT A**

ID# 2022-0044164-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

22102247

Ann B. Harris - 56
APR 01, 2022 12:10 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **NAZARETH PLAZA, LLC,** | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **CIVIL CASE NO. _____** |
| | * | |
| | * | |
| **GAF Materials LLC; Lowe's** | * | |
| **Home Improvement, LLC (a/k/a** | * | |
| **Lowe's Home Centers, LLC),** | * | |
| Defendant, | * | |

---

## COMPLAINT FOR DAMAGES

---

COMES NOW Plaintiff Nazareth Plaza, LLC ("Plaintiff"), by and through the undersigned

counsel, and files this Complaint against Defendants GAF Materials LLC and Lowe's Home

Improvement, LLC (sometimes collectively referred to as "Defendants"), showing this Court

as follows:

### NATURE OF ACTION

1.

This is a product liability action wherein Plaintiff asserts claims for breach of express

warranties, breach of the implied warranty of merchantability, strict liability, violation of the

Georgia Fair Business Practices Act, and fraudulent concealment in connection with

defective roofing materials designed, manufactured, marketed, advertised and sold by

Defendants.

2.

At all times material hereto, Defendants designed, manufactured, marketed and/or sold GAF Mineral Guard Roofing material ("Mineral Guard"), and represented, marketed, and warranted them to be durable, reliable, free from defects and compliant with certain industry standards to be appropriate for use on commercial buildings and other structures.

3.

In contrast to Defendants' warranties, advertisements and representations concerning Mineral Guard, the Mineral Guard materials installed on Plaintiff's commercial business in Marietta, Georgia were defective at the time of sale because, due to design, storage and manufacturing defects: (i) were easily permeated by rainwater and leaked rainwater into Plaintiff's roofing, which led to increased moisture absorption and premature failure; (ii) cannot be expected to fulfill their warranted service life; and (iii) otherwise do not perform as expressly warranted and represented.

4.

Nevertheless, even after Defendants learned of the defect, they continued to sell Mineral Guard to the public and to make false representations and warranties, despite knowing the defects would eventually cause consumers enormous property damage and substantial removal and replacement costs.

5.

Defendants' representations were representations of fact as to the inherent nature and quality of Mineral Guard that they manufactured and sold.

6.

Plaintiff believes that, after Defendants received many complaints from consumers about these defects, Defendants finally made changes to or discontinued the manufacture of Mineral Guard.

7.

As a result of Defendants' Mineral Guard materials, Plaintiff has suffered and continues to suffer extensive damages that are a natural, unavoidable, and expected consequence of the product's failure to protect against the very harm that the product purports to avoid.

8.

This action seeks damages, costs, attorneys' fees, and all other relief available to Plaintiff arising from Defendants' sale of defective Mineral Guard.

## PARTIES

9.

Plaintiff is a Georgia limited liability corporation and is a citizen and resident of the State of Georgia, with its principal place of business and located at 585 Franklin Gateway, Marietta, Cobb County, Georgia, 30067. Plaintiff's commercial building contains Mineral Guard roofing material, which was installed in the spring of 2019.

10.

Defendant Lowe's Home Improvement, LLC (a/k/a Lowe's Home Centers, LLC) ("Lowe's") is a foreign limited liability company with its Georgia registered agent located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Lowe's principal place of business is located at 1000 Lowe's Blvd., Mooresville North Carolina 28117. Defendant GAF Materials LLC holds itself out as the largest manufacturer of roofing materials in the United States and is a foreign limited liability company with its principal place of business located at 1 Campus Drive, Parsippany, New Jersey 07054. GAF's registered agent in Georgia is located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

11.

Defendants hold themselves out to both the construction industry and the public at large as being knowledgeable in the design and manufacture of roofing products and as being providers of quality roofing products, including Mineral Guard, which is the subject of this litigation.

12.

Defendant Lowe's is a large home improvement retail company with billions in annual sales to residential and commercial customers. GAF claims to be the largest roofing materials manufacturer in North American with multiple plants located throughout the country, including Georgia.

## JURISDICTION AND VENUE

13.

Defendants conduct regular and systemic business in Georgia, including the sale and distribution of Mineral Guard throughout Georgia and Cobb County, and have sufficient contacts with Georgia or otherwise intentionally avails itself of the laws and markets of Georgia to sustain this Court's jurisdiction over Defendant. In addition, Defendants Lowe's and GAF are registered to transact business in Georgia and both maintain registered agents with Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

14.

Venue lies in Cobb County because Plaintiff resides in this county, and a substantial part of the tortious events or omissions and injury giving rise to Plaintiff's claims occurred to real property located in this county.

## INTRODUCTION AND BACKGROUND

15.

Defendants designed, manufactured, distributed, and sold Mineral Guard for many years in many states, including throughout Georgia. Defendants became aware of the potential for Mineral Guard product to fail but did nothing to correct the defective design, formulation, and or practices that resulted in the degradation of the life expectancy of Mineral Guard or other defects alleged herein.

16.

Defendants sold Mineral Guard to the building owners, contractors and suppliers who installed Mineral Guard onto homes and buildings owned by the consuming public, including Plaintiff.

17.

In conjunction with each sale, Defendant GAF provided Limited Warranty (the "Warranty") that Mineral Guard would be free from manufacturing defects and that GAF would replace or refund the price for non-conforming Mineral Guard.  The Warranty attempts to bar all other remedies, "regardless of the theory on which a claim may be based (including, without limitation, negligence, contract, breach of warranty, strict product liability or misrepresentation) . . ." Further, the Warranty seeks to hold GAF not liable for any incidental, consequential, special, indirect, or punitive damages. GAF's limited warranty attempts to disclaim all other warranties, express or implied, including the implied warranties of merchantability and fitness for a particular purpose. With respect to Plaintiff, the Warranty is good for five (5) years from the date of installation.

18.

In addition, Defendants represented and warranted that Mineral Guard conformed to certain applicable industry standards and building codes, as set forth more fully below. The conformance of Mineral Guard to these applicable industry standards and building codes formed part of the basis of the bargain when Plaintiff purchased Mineral Guard.

19.

Defendants made representations to Plaintiff regarding the existence of its 5-year Warranty and the compliance of Mineral Guard with certain industry standards and conformity with GAF's own specifications in documents available to the public, including product brochures, marketing materials and product labels. Defendants made these representations before Plaintiff's original purchase of Mineral Guard.

20.

Plaintiff and/or his contractor(s) relied upon these representations and warranties which became a basis of the bargain when Plaintiff purchased Mineral Guard.

21.

However, Mineral Guard did not conform to Defendants' express representations and warranties. At the time of sale, Mineral Guard were not merchantable and not reasonably suited to the use intended based on its defective design, manufacture, and/or distribution practices by Defendants.

22.

Specifically, Mineral Guard was defective because Defendants improperly designed, manufactured, and/or distributed Mineral Guard in a manner that permitted moisture to intrude into and through the Mineral Guard roofing material. Because the material was so easily permeated by rainwater, significant water leakage entered into Plaintiff's commercial property, forcing Plaintiff to forgo collecting rent payments from furious tenants who occupied the building.

23.

The defects present in Defendants' Mineral Guard made Mineral Guard unfit for its intended use and are so severe that Plaintiff was forced to expend large sums of money to repair its Mineral Guard roof sooner than reasonably expected by ordinary consumers who purchase Mineral Guard generally or by consumers who purchased Defendants' Mineral Guard. In addition, Mineral Guard was so defectively designed, manufactured, or distributed that it prematurely fails, causing the damage to underlying structures it exists to prevent, and Mineral Guard cannot be expected to fulfill any reasonable service life.

24.

Defendants knew that Mineral Guard was defective in design, manufacture, and/or distribution; is not fit for their ordinary and intended use; is not merchantable; and it failed to perform in accordance with the advertisements, marketing materials, and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiff.

25.

Defendants also knew or should have known that Mineral Guard did not conform to the applicable building code and industry standard requirements.

26.

Indeed, because Mineral Guard is defectively permeable, which leads to numerous roof leaks and degradation in life expectancy of Mineral Guard, Mineral Guard is neither suitable nor durable for use as a building product.

27.

The defects are present in all of Plaintiff's Mineral Guard roofs and have manifested the expected resulting damage. Plaintiff has had to incur substantial expense to fix the leaking Mineral Guard roof.

28.

Thus, Mineral Guard has failed to meet Defendants' representations and warranties and, given the resulting unexpected repair and replacement, Mineral Guard has not proven to be of value when compared to similar roofing products. Ultimately, Mineral Guard cannot be expected to fulfill anywhere near a reasonable service life.

## FACTS

### A. Defendants' Defective Design and Manufacture of Mineral Guard

29.

In order to comply with applicable building codes and industry standards applicable to roofing Mineral Guard, Defendants were required to manufacture and store its Mineral Guard products in such a way that they are impermeable to rainwater and moisture.

30.

Finished Mineral Guard is required to be impermeable to rainwater.

31.

Throughout the manufacturing process and storage locations, care must be taken not to affect Mineral Guard such as to render it permeable to moisture and rain, as moisture and rain can create leaks upon installation to the structures below which the roofing material is designed to protect.

32.

Defendants' design, manufacturing and/or storage process for Mineral Guard, however, rendered the Mineral Guard material permeable to rainwater and thus unsuitable for installation on any roof.

33.

Due to defects in Defendants' design, manufacturing and/or distribution of Mineral Guard, Mineral Guard did not conform to Defendants' express representations and warranties and does not conform to the applicable building codes or industry standards.

**B.  Defendants' Warranties and Representations Regarding Mineral Guard**

34.

Defendants represented to Plaintiff and/or its contractor, in documents generally available to the public, that their Mineral Guard would be free from defects and have a useful life of five (5) years.  Lowe's also represented expressly and impliedly that Mineral Guard met industry-accepted building code and industry standards.

35.

Defendants made these representations before Plaintiff's purchase and again at the time of Plaintiff's purchase through its written Warranty, sales brochures, marketing materials, displays, and on the packaging for Mineral Guard.

36.

Specifically, Defendants provided a 5-year Warranty for Mineral Guard "against manufacturing defects."

37.

As noted, Defendants represented that its Mineral Guard conformed to all applicable industry standards and building codes, which includes Georgia's building codes.[2] In particular, the International Residential Code (IRC), Chapter 9 (Roof Assemblies), states in part that the roof assembly shall serve to protect the building or structure and shall comply with certain industry standards, which Defendants assured Plaintiff that Mineral Guard would fully comply.

### C.  Defendants' Knowledge of the Defective Product

38.

On information and belief, Plaintiff believes Defendants received an influx of Warranty claims and complaints pertaining to quality issues with Mineral Guard, and thus Defendants were on notice that the Mineral Guard roofing materials were defective even before Plaintiff purchased Mineral Guard. Despite being on notice of such defects, Defendants continued to market and sell it to the public, including Plaintiff.

39.

Plaintiff believes that discovery will reveal the full extent of quality problems with the Material Guard roofing materials and the volume of complaints Defendants received for the same. Rather than cease production or fix the problems, Defendants continued to market and sell Mineral Guard to the public, including Plaintiff.

40.

---

[2] Georgia has adopted mandatory building codes, including the International Building Code. O.C.G.A. § 8-2-20(9)(B).

For years, Defendants' management knew of, or should have identified, a permeability issue with Mineral Guard as a major problem that needed to be eliminated or fixed. However, such elimination was never achieved, and Defendants continued to market and sell Mineral Guard to the public, including to Plaintiff in 2018.

41.

Although Defendants was aware that Mineral Guard was defective and caused widespread water leaks, Defendants routinely either blamed the customers or each other when a Warranty claim was filed, or they otherwise improperly denied the claims.

42.

Defendants knew or should have known of the building code requirements in Georgia, and that these requirements included conformance with certain industry standards for Mineral Guard.

43.

Defendants knew or should have known that its Mineral Guard did not satisfy these industry standards or fulfill its representations and warranties as a competent / serviceable / merchantable roofing product and, as a result, Defendants knew or should have known its Mineral Guard failed to comply with applicable International Residential Code, Chapter 9, and/or Georgia building codes.

44.

Defendants knew of ASTM International standard material specifications, which define formulations, physical properties and performance criteria and prescribe associated

minimum levels of testing and minimum acceptable performance levels; and Defendants represent that Mineral Guard is compliant with the ASTM D3909.[1] Defendants also knew or should have known of the ICC building codes applicable to Mineral Guard as incorporated into O.C.G.A. § 8-2-20 (9)(B).

45.

Defendants knew or should have known that Mineral Guard did not satisfy ASTM D3909 or the applicable ICC standard for Mineral Guard at issue.

46.

Despite years of knowledge that its Mineral Guard materials were defective and causing water leaks, Defendants continued to market and sell Mineral Guard to the public and Plaintiff. Defendants never recalled Mineral Guard or notified customers, including Plaintiff, of the defect with Mineral Guard, nor have they taken responsibility for the problems and damages their product caused their customers, including Plaintiff.

**D. Plaintiff's Purchase of Defendants' Mineral Guard**

47.

Plaintiff's President, Mr. Waleed Jaraysi, owned a large commercial building in Marietta, GA, located at 560 Franklin Gateway SE, Marietta, GA 30067, that needed a roof replacement.

48.

---

[1] ASTM D3909 is the "Standard Specification for Asphalt Roll Roofing (Glass Felt) Surfaced with Mineral Granules," and "provides composition requirements, physical property requirements and packaging requirements for a category of material used as cap sheets in the construction of built-up roof systems. The standard provides mass and area per roll requirements for products with their top sides completely surfaced with mineral granules, known as no-selvage roll roofing, and products with 2- and 4-inch-wide side lap areas free of mineral surfacing, known as 2-inch selvage and 4-inch selvage, respectively." https://www.nrca.net/technical/guidelines-resources/codes-standards.

By its express terms, Defendants' Warranty applied to Plaintiff as the original purchaser of the Mineral Guard product.

49.

At the time Mr. Jaraysi land was contemplating the purchase of the new roofing material, Defendants represented to him that Mineral Guard was compliant with the building code and industry standards and were of high quality. This representation assured and led Plaintiff to believe, at minimum, that Mineral Guard would last approximately five (5) years. Such representation and his reliance thereon was reasonable in light of Defendants' Warranty that Mineral Guard would be free of defects for five (5) years and in light of Defendants' expertise and sophistication in the subject matter over Plaintiff.

50.

Defendants' 5-year Warranty provided for repair or replacement of Mineral Guard until the year 2022, 5 years after Plaintiff purchased the material in 2018.

51.

Plaintiff's decision to purchase Mineral Guard was based upon materials and information provided by Defendants, including its Warranty and the useful life of Mineral Guard as represented in Defendants' marketing material, specifications, and packaging. Plaintiff relied upon Defendants' representations when it selected and purchased Mineral Guard instead of other products for Plaintiff's commercial property.

52.

Although aware that the Defendants 5-year Warranty existed, Plaintiff, as a building owner/consumer, was not in a position to negotiate the terms of the Warranty, did not see its specific, minute terms or limitations at the time he purchased the Mineral Guard, and was not in a position to test the product prior to purchase.

53.

Plaintiff was aware that a 5-year limited warranty existed, and Plaintiff reasonably believed and expected that the fine print, detailing particular terms of the Warranty would be conscionable, especially when he did not and could not see the full terms of the Warranty at the time of purchase.

54.

Plaintiff relied upon the existence of the Warranty as well as the Defendants' representations when it decided to purchase the Mineral Guard roofing, believing that its roof should last for five (5) years.

55.

Plaintiff would not have purchased Mineral Guard if he had known of its defective nature or that Defendants would not honor their Warranty.

56.

Almost immediately upon installation of the Mineral Guard roof, Plaintiff began to experience leaks into the substructure and rental space within its building. Such leaks caused major problems for Plaintiff's tenants, and thousands of dollars in rent had to be forgiven.

57.

In an effort to identify the cause of the leaks, Plaintiff hired several two sets of roofing engineers to inspect his new roof to identify the source of the problematic leaks.

58.

After the engineering inspections of the roof, Plaintiff was informed by the inspectors that he had a defective Mineral Guard roof. The inspectors stated the Mineral Guard material was of poor quality and was permeable when water was poured onto samples kept by Plaintiff of the original Mineral Guard rolls that were utilized for installation on Plaintiff's commercial building.

59.

Throughout 2018 and 2019, through counsel and through its president, Plaintiff placed Defendants on notice of the defective nature of his Mineral Guard, and further that Defendants was in breach of its warranties and in violation of Georgia's Fair Business Practice Act ("FBPA").

60.

Defendants failed to take any ownership over the leak issues such as taking remedial action or even offering advice in response to the notices of Defendants' defective Mineral Guard roofing material.

**E.  Defendants Refused to Notify Customers of the Shingle Defects**

61.

Plaintiff alleges, on information and belief, that Defendants has received many Warranty claims alleging the same design and/or manufacturing defect, and that such defects are the subject of litigation throughout Georgia and the United States. Upon information and belief, Defendants has improperly rejected some of these Warranty claims and settled others in a manner not consistent with the Warranty terms.

62.

Defendants' response to their customers' Warranty submissions and other reasonable requests for assistance and compensation (including those of Plaintiff) is woefully inadequate and unconscionable.

63.

For instance, after being put on notice of Plaintiff's claims, Defendants simply refused to take any action in response to the claim, including investigating the claim. At no time have Defendants disclosed that there was a design and manufacturing defect in Mineral Guard that resulted in the aforementioned damages.

64.

Despite receiving complaints from consumers such as Plaintiff regarding the defect in design, manufacturing, and/or distribution, Defendants has refused to convey effective notice to consumers concerning the defects associated with Mineral Guard and refused to fully repair the damage caused by the premature failure of its product. Instead, Defendants refused to honor Warranty claims and failed to disclose their reason for doing so.

65.

The damages suffered by Plaintiff were a foreseeable result of Defendants' design and manufacture of a product with the defects discussed herein. Likewise, the manufacturing, production, marketing, distribution, and sale of their defective product are in the complete control of Defendants, and thus the damages were foreseeable to Defendants.

66.

On information and belief, subsequent discovery will reveal Defendants have received and continue to receive numerous complaints and claims from homeowners, property owners, developers and installers regarding the failure of Defendants' Mineral Guard, and, thus, Defendants knew that their product was and is defective.

67.

Defendants failed to take any steps to notify Plaintiff or his builder/contractor of the defects in its Mineral Guard.

68.

Furthermore, Defendants has failed to take steps to adequately compensate Plaintiff in order to make him whole for the damage he has suffered and continue to suffer as a result of the defective Mineral Guard.

69.

As a result of the defects and failures alleged herein, Plaintiff has suffered actual damages. Mineral Guard on his commercial building will continue to fail prematurely compared to: (i) similar roofing products; (ii) the useful life expected by ordinary consumers; (iii) the time of useful life marketed by Defendants; and (iv) the period warranted by Defendants. Such failure required Plaintiff to expend large sums of money to repair the damage caused by the defective Mineral Guard and to prevent such damage from continuing. Ultimately, Mineral Guard cannot be expected to fulfill its service life.

70.

At all relevant times, Defendants had a duty to disclose to Plaintiff and/or its contractor that their Mineral Guard was defective, that the defects were known to Defendants, that it was prone to foreseeable and uniform problems such as the problems described herein, and that it was otherwise inherently flawed in its design, manufacture, and/or distribution such that Mineral Guard is not reasonably suitable for use as an exterior roofing material.

71.

Since the defects in Mineral Guard are latent and not detectable until manifestation, Plaintiff was not reasonably able to discover that their Mineral Guard was defective until after installation, even with the exercise of due diligence.

72.

Mineral Guard materials, which are designed, manufactured, produced, marketed, and sold by Defendants, are defectively designed, manufactured, and/or distributed such that they failed prematurely, causing damage to the property of Plaintiff and forcing it to repair or replace Mineral Guard sooner than reasonably expected, marketed, and warranted.

73.

Despite being aware of the defects as stated herein, Defendants concealed from consumers, homeowners, contractors and roofers their knowledge that their Mineral Guard failed to comply with ASTM D3909 and IRC, would prematurely fail, and cannot be expected to fulfill their service life.

74.

Despite being aware of the defects stated herein, Defendants denied Plaintiff's Warranty claim and continued to conceal their knowledge of the product's defects.

75.

At a minimum, Plaintiff seeks to recover the costs of repairing the damage to its property, replacing its Mineral Guard roofing with a silicone barrier, the rent forfeited to its angry tenants who experienced roof leaks, and its attorney's fees.

## COUNT I

## BREACH OF EXPRESS WARRANTY

76.

Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 75 as though fully set forth herein.

77.

Defendants marketed and sold Mineral Guard into the stream of commerce with the intent that Mineral Guard would be purchased by Plaintiff and/or its contractor and extended their warranties to Plaintiff.

78.

Through their Warranty, brochures, and marketing materials regarding the durability and quality of Mineral Guard, Defendants created express warranties that became part of the basis of the bargain with Plaintiff.

79.

Defendants' Warranty was a warranty of future performance.

80.

Defendants expressly warranted to Plaintiff and/or its contractor that Mineral Guard purchased by Plaintiff or its contractor were free from defects that would substantially impair their operation or performance and that they would last at least five (5) years.

81.

Defendants also expressly represented that Mineral Guard would conform to all applicable building codes and certain industry standards.

82.

These representations became the basis of the bargain when Plaintiff and/or its contractor purchased Mineral Guard. Plaintiff and/or its contractor would not have purchased Mineral Guard if Defendants had disclosed that Mineral Guard did not conform to Defendants' express representations and warranties.

83.

No prudent person, including Plaintiff and its contractor, would subject Mineral Guard to microscopy or engineering tests to ascertain the truthfulness of Defendants' numerous representations. The defects could not have been discovered by the buyer in the exercise of due diligence.

84.

Defendants breached their express warranties to Plaintiff in that their Mineral Guard did not, and does not, maintain its structural integrity or perform as promised or conform to all

applicable building codes and industry standards. Defendants' Mineral Guard was installed correctly but demonstrated heavy problems with permeability by rainwater, increased moisture absorption, premature failure, reduced life expectancy, and otherwise did not perform as warranted by Defendants.

85.

Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Mineral Guard, let alone reimburse for any damage suffered to Plaintiff's business as a landlord or to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy, including—at a bare minimum—the cost of labor to install and fix the Mineral Guard. Further, the Warranty is inadequate and illusory because, in response to Warranty claims related to these defects, Defendants assert that the problems are caused by external factors such as improper installation.

86.

The following limitations on remedies provided in the Defendants' warranties are unconscionable:

a. Express disclaimer that "sole and exclusive remedy" available to purchaser "is the replacement of [the] product or, in alternative, the original purchase price of [the] product," given that Mineral Guard exists to protect structures from rainwater and therefore exists to prevent the naturally occurring and foreseeable damages caused by rainwater, and that rainwater damage occurred;

b.  Express disclaimer of causes of action for breach of express warranty outside of the terms of the Warranty, "regardless of the theory on which a claim may be based, including, without limitation, negligence, contract, breach of warranty, strict product liability or misrepresentation;" given that Mineral Guard exists to protect structures from rainwater and therefore exists to prevent the naturally occurring and foreseeable damages caused by rainwater, and rainwater damage occurred;

c.  Express disclaimer that "In NO event shall GAF be liable for INCIDENTAL, CONSEQUENTIAL, SPECIAL, INDIRECT, OR PUNITIVE DAMAGES," given that Mineral Guard exists to protect structures from rainwater and therefore exists to prevent the naturally occurring and foreseeable damages caused by rainwater, and rainwater damage occurred;

d.  Express disclaimer of the Limited Warranty being "IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE," given that Mineral Guard exists to protect structures from rainwater and therefore exists to prevent the naturally occurring and foreseeable damages caused by rainwater, and rainwater damage occurred;

e.  Asserting that, at Defendant's discretion, the purchaser can be required to provide roofing samples at its own expense to Defendants as part of the Warranty claim;

f.  Asserting "It is purchaser's sole responsibility to determine the suitability of this product for any particular application," where the purchaser purchased the roofing material for its proper intended purpose and installed them correctly; and

g.  In other such ways as may be revealed during discovery or determined at trial.

87.

The limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable in light of the fact that Defendants knew that Mineral Guard suffered from the defects described herein.

88.

The limitations on remedies and exclusions in Defendants' Warranty are additionally unconscionable and unenforceable due to the parties' unequal bargaining power, and particularly that Defendants was the drafter of the contract and Plaintiff and/or his contractor were not afforded the ability to negotiate the Warranty.

89.

Additionally, the limitations on remedies are unconscionable given that the remedy provided is inadequate because the property owner and/or purchaser is deprived of reimbursement or coverage of labor costs associated with repair or replacement, as well as consequential damages resulting from the defective Mineral Guard.

88.

The limitations on remedies and exclusions in Defendants' warranties are additionally unconscionable and unenforceable due to Plaintiff's and the general public's inability to

detect and identify the defects, especially in light of Defendants' confusing and misleading representations regarding Mineral Guard' life, durability, and compliance with industry standards and building codes.

89.

The limitations on remedies and exclusions in Defendants' Warranty are unconscionable given that the Warranty is inadequate, while purporting to disclaim any other cause of action which might otherwise make Plaintiff whole.

90.

The Plaintiff submitted timely and compliant Warranty claims to Defendants, through counsel, of Mineral Guard's defects and resulting damages.

91.

The Plaintiff submitted timely and compliant pre-suit notice of Defendants' breach of their Warranty, to which Defendants failed to take any remedial action in response.

92.

Despite Plaintiff's Mineral Guard still being under Warranty, Defendants failed and refused, and continue to fail and refuse, to investigate Plaintiff's Warranty claim.

93.

Defendants' breach of its express warranties has caused Plaintiff actual damages, including, without limitation, the expense of repairing or replacing Mineral Guard. Replacement was required to prevent on-going and future damage to the underlying structures or interiors of

Plaintiff's property and structures, which Mineral Guard existed and represented itself as existing to prevent.

94.

As a direct and proximate result of Defendants' breach of the express warranties, Plaintiff has suffered actual and consequential damages.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

95.

Plaintiff adopts and  incorporates by reference the allegations contained in paragraphs 1 through 94 as though fully set forth herein.

96.

Because Defendants extended an express warranty for Mineral Guard to Plaintiff, privity of contract exists between Defendants and Plaintiff.

97.

Each Defendant is a designer, manufacturer, supplier, or distributor of Mineral Guard and for years, marketed, warranted, distributed, and/or sold Mineral Guard in Georgia.

98.

Defendants manufactured and sold Mineral Guard to Plaintiff, and, in so doing, impliedly warranted to it that the product was of merchantable quality and fit for its intended use.

99.

However, due to the defects in Mineral Guard described herein, Defendants' Mineral Guard was not of merchantable quality and not fit for its intended use when it left the Defendants' control.

100.

Defendants' Mineral Guard is not compliant and would not pass without objection in the trade under Defendants' product description.

101.

The numerous and serious defects described herein make Mineral Guard unfit and inappropriate for its intended use as a covering for building exteriors.

102.

Even after Plaintiff became aware of the leakage issues and gave proper notice to Defendants, Defendants failed to provide an adequate remedy.

103.

As a result, Defendants breached their implied warranties to Plaintiff by producing, manufacturing, distributing and selling it a defective product that was unfit for its intended use.

104.

Also, for the reasons set forth more fully above, the limitations and exclusions contained in the Defendants' Warranty, including the purported exclusion of implied warranties, are

unconscionable and cause the Defendants' Warranty to fail of its essential purpose. Accordingly, such limitations and exclusions cannot be enforced against Plaintiff.

105.

In addition, the alleged disclaimer of implied warranties in the Defendants' Warranty is not sufficiently conspicuous and is therefore not enforceable.

106.

As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiff has suffered actual and consequential damages.

## COUNT III

## STRICT PRODUCTS LIABILITY

107.

Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 106 as though fully set forth herein.

108.

At all times relevant to this Complaint, Defendants were engaged in the design, manufacture, sale, or distribution of Mineral Guard and had a statutory duty of care as set forth by O.C.G.A. § 51-1-11.

109.

As detailed herein, Defendants breached this duty of care by designing, manufacturing, storing, and/or distributing Mineral Guard in a manner that develops permeability problems,

allows rainwater to enter into the structures it covers, reduces its life expectancy, and deteriorates prematurely.

### 110.

As a result of these defects, Mineral Guard, at the time of sale, was not merchantable or reasonably suited for its intended use and reached consumers without substantial or significant changes in the condition from when Defendants sold them.

### 111.

Defendants' breach of its statutory duties was the actual and proximate cause of Plaintiff's damages.

### 112.

The defective Mineral Guard has caused or will cause damages and expenses, including to the structures, fixtures, and other components of the building. All such damages are natural and foreseeable consequences of Mineral Guard's failure to provide the rainwater protection it exists to provide.

### 113.

Because of Defendants' defective design of Mineral Guard, Plaintiff has been damaged in an amount to be determined at trial.

### 114.

Plaintiff demands judgment against Defendant for compensatory damages, plus attorneys' fees, interest and costs.

**COUNT IV**

## VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT, O.C.G.A. § 10-1-390, *et seq*.

### 115.

Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 113 as though fully set forth herein.

### 116.

Defendants' extensive length of time knowingly marketing and selling defective Mineral Guard, which experiences catastrophic failures related to permeability by rainwater, is a violation of Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. ("FBPA").

### 117.

On information and belief, at the time Plaintiff's Mineral Guard was purchased from Defendants and installed, Defendants had known for years that its Mineral Guard was defective. Defendants had this same knowledge at the time Plaintiff made its Warranty claim.

### 118.

At no point during the sale or subsequent Warranty response did Defendants disclose its knowledge of the defects to Plaintiff or any other consumer.

### 119.

The FBPA declares unlawful any "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393.

120.

Specifically, the following acts are unlawful:

a. "Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods..." O.C.G.A. § 10-1-393(b)(2);

b. "Causes actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another;" O.C.G.A. § 10-1-393(b)(3);

c. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;" O.C.G.A. § 10-1-393(b)(5); and

d. "Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;" O.C.G.A. § 10-1-393(b)(7).

121.

Plaintiff is a consumer as defined by O.C.G.A. § 10-1-392.

122.

Defendants' sale of Mineral Guard is a "consumer transaction," and is "trade" and "commerce" as defined by O.C.G.A. § 10-1-392.

123.

Mineral Guard are "goods" within the meaning of O.C.G.A. § 10-1-390, *et seq*.

124.

Defendants engaged in unfair and deceptive trade practices through the following conduct:

a.  Having extensive knowledge of the defective nature of Mineral Guard and failing to disclose such knowledge to Plaintiff;

b.  Representing that Mineral Guard was suitable exterior building products, when it was not;

c.  Representing that Mineral Guard complied with GA building code and industry standards, when it did not;

d.  Representing that Mineral Guard would last at least five (5) years, when it would not;

e.  Representing that Mineral Guard came with an express Warranty, which Defendants failed and refused to honor;

f.  Failing to disclose to the Plaintiff that Mineral Guard:

   (i) was defective;

   (ii) was not a suitable exterior building product,

   (iii) would prematurely fail;

   (iv) cannot be expected to fulfill its service life; and

   (v) would cause damage to other property.

125.

Defendants' conduct caused actual confusion and actual misunderstanding with Plaintiff and/or its contractor, in that they believed they were purchasing and installing Mineral Guard

that complied with the Georgis building code and industry standards, was a suitable exterior building product, was not defective, would not prematurely fail, and came with a 5-year Limited Warranty that the Defendants would honor.

126.

In reality, Defendants' statements were false and misleading in that Mineral Guard did not comply with building codes or industry standards, was not a suitable exterior building product, was defective, did prematurely fail, cannot be expected to fulfill its expected service life, and Defendants failed and/or refused to honor the Limited Warranty.

127.

Had Plaintiff and/or its contractor known the Defendants' statements were false or misleading, it would not have purchased Mineral Guard.

128.

As a proximate consequence of Defendants' improper conduct, the Plaintiff was injured, including not receiving the value of the product it purchased, loss of property value, damage to other property from rainwater leaking, and in other ways.

129.

Plaintiff has provided Defendant with the statutory required notice of their FBPA claims more than 30 days prior to the filing of this Complaint. Defendant has failed to take action in response to the notice.

130.

Defendant is engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

131.

Plaintiff is entitled to recover actual damages, equitable and injunctive relief, treble damages, and attorneys' fees.

## COUNT V

## FRAUDULENT CONCEALMENT

132.

Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 131 as though fully set forth herein.

133.

At all times mentioned herein, Defendants, through their experience and knowledge of the Mineral Guard product, were in a position of superiority to Plaintiff and as such had a duty and obligation to disclose to Plaintiff the true facts and their knowledge concerning Mineral Guard; that is, that Mineral Guard was defective, would prematurely fail, cannot be expected to fulfill its service life, and otherwise was not warranted and represented by Defendants.

134.

The sale of a building product by a manufacturer to a property owner (or builder/contractor) for the weather protection of his/her property created a particular circumstance giving rise to Defendants' obligation and duty to disclose known defects in Mineral Guard.

135.

As the manufacturer and issuer of the Warranty, the filing of a Warranty claim would be a particular circumstance giving rise to Defendants' obligation and duty to disclose known defects in Mineral Guard. However, when Plaintiff filed a Warranty claim, Defendants not only failed to disclose the known defects but refused to investigate Plaintiff's Warranty claim.

136.

At all times Defendants sold Mineral Guard, they knew they would be the only parties to the purchase that knew or had the expertise to know that Mineral Guard was defective in the manner Plaintiff alleges in this Complaint. This special, superior knowledge additionally created a particular circumstance giving rise to Defendants' obligation and duty to disclose known defects in Mineral Guard to Plaintiff.

137.

As described above, Defendants knew for years that Mineral Guard was defective in its design or was defective by the time it reached consumers which caused the water permeability issues and rainwater leakage. However, Defendants continued to market and

sell the defective Mineral Guard, without notifying the property owner of the defects and the potential, naturally-resulting damage.

138.

At the time Plaintiffs Mineral Guard was purchased and installed, Defendants had known for at least four years that Mineral Guard was defective. However, they failed to disclose the defective nature of Mineral Guard to Plaintiff.

139.

As mentioned herein, Defendants made the affirmative representations as set forth in this Complaint to Plaintiff and the general public prior to the dates Plaintiff purchased Mineral Guard, while at the same time concealing the material defects described herein for years.

140.

Specifically, Defendants fraudulently represented:

    a.  that Mineral Guard was suitable exterior building products, when it was not;

    b.  that Mineral Guard complied with the building code and industry standards, when it did not;

    c.  that Mineral Guard would last at least five (5) years, when it would not;

    d.  that Mineral Guard came with an express Warranty, when Defendant failed and refused to honor such Warranty;

141.

Further, Defendants fraudulently failed to disclose that Mineral Guard:

a. was defective;

b. was not suitable exterior building products;

c. would prematurely fail;

d. cannot be expected to fulfill its service life; and

e. would cause damage to the underlying property or structures.

142.

Each of the foregoing misrepresentations and omissions was material to Plaintiff's purchase decision.

143.

The representations made by Defendants were representations related to inherent nature and quality of Mineral Guard, including Mineral Guard's useful life, suitability for an exterior building product, conformance with industry standards and building codes. Defendants knew that the inherent nature and quality of Mineral Guard was not as represented and that the inherent defect could not be cured; yet Defendants continued to assure property owners that Mineral Guard would last for five (5) years, was suitable roofing material for the protection of properties from rainwater, and was compliant with industry standards and building codes.

144.

By the foregoing misrepresentations and omissions, Defendants actively concealed a known defect and defective quality of Mineral Guard from Plaintiff and/or its contractor. As Plaintiff and/or its contractor are not roofing material manufacturers or roofing material

manufacturing experts, they could not have easily or reasonably discovered the defects or known that Defendants' representations were fraudulent or in concealment of Defendants' knowledge of any defect.

145.

Defendants was obligated under the particular circumstances giving rise to the sale of Mineral Guard to disclose its special, superior knowledge of the defects to Plaintiff but failed to do so. In so doing, Defendants breached a duty to Plaintiff.

146.

The material facts concealed or not disclosed by Defendants are those which a reasonable person would have considered to be important in deciding whether or not to purchase Mineral Guard.

147.

At all times mentioned herein, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff and with the intent to defraud as herein alleged.

148.

Further, when put on notice of Plaintiff's claims, Defendants refused to even investigate the condition of Mineral Guard or otherwise acknowledge that Mineral Guard are defective.

149.

At all times mentioned herein, Plaintiff reasonably relied on Defendants to disclose to those material facts as set forth above. If Defendants had disclosed the above facts to Plaintiff and/or its contractor, Plaintiff would not have purchased the property with Mineral Guard.

150.

Defendants continued to conceal the defective nature of its Mineral Guard even after it was notified of numerous problems.

151.

Indeed, Defendants continues to cover up and conceal the true nature of the problem. Based on information and belief, Defendants has received thousands of Warranty claims concerning Mineral Guard.

152.

Defendants were under a duty to disclose to Plaintiff and the consuming public the aforementioned as it pertains to Mineral Guard.

153.

Defendants knew Plaintiff had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' Mineral Guard as alleged herein. This special, superior knowledge also created a particular circumstance giving rise to Defendants' obligation and duty to disclose known defects in Mineral Guard.

154.

Defendants brought their Mineral Guard to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

155.

As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiff sustained damages in an amount to be determined at trial.

## COUNT VI LITIGATION EXPENSES

156.

Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 155 as though fully set forth herein.

157.

As set forth above, Defendants acted in bad faith, been stubbornly litigious and has caused Plaintiff to incur unnecessary trouble and expense, entitling Plaintiff to recover his costs and reasonable attorneys' fees incurred in this proceeding pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

a. For compensatory damages, and all other damages allowable under the law, sustained by Plaintiff;

b. For equitable and/or injunctive relief;

c. For payment of costs of suit herein incurred;

d. For both pre-judgment and post-judgment interest at the maximum rate allowable at law on any amounts awarded;

e. For payment of the expenses of litigation, including reasonable attorneys' fees, as may be allowable under applicable law; and

f. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully Submitted,

This 1st day of April, 2022.

*/s/ John F. Meyers*
John F. Meyers
JMeyers Group, LLC
James E. Voyles

*/s/ James E. Voyles*
James E. Voyles
The Voyles Law Firm, P.C.
1755 The Exchange SE, Ste. 339
Atlanta, Georgia 30339
Email: john@JMeyersgroup.com
Email:jvoyles@voyleslaw.com
Phone: 770-800-6928

*Counsel for Plaintiff*

ID# 2022-0044165-CV
⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**

Ann B. Harris - 56
APR 01, 2022 12:10 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>22102247</u>

$214.00 COST PAID

Nazareth Plaza, LLC
_____

**PLAINTIFF**

**VS.**

GAF Materials, LLC;
Lowe's Home Improvement, LLC
_____

**DEFENDANTS**

## SUMMONS

TO: GAF MATERIALS, LLC;

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **James Voyles**
> **Voyles Law Firm**
> **1755 The Exchange**
> **Suite 339**
> **Atlanta, Georgia 30339**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 1st day of April, 2022.**

Clerk of Superior Court

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

ID#2022-0044166-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**

Ann B. Harris - 56
APR 01, 2022 12:10 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER   22102247

$214.00 COST PAID

Nazareth Plaza, LLC

_____

**PLAINTIFF**

**VS.**

GAF Materials, LLC;
Lowe's Home Improvement, LLC

_____

**DEFENDANTS**

## SUMMONS

TO: LOWE'S HOME IMPROVEMENT, LLC

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **James Voyles**
> **Voyles Law Firm**
> **1755 The Exchange**
> **Suite 339**
> **Atlanta, Georgia 30339**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 1st day of April, 2022.**

Clerk of Superior Court

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

Page 1 of 1

ID# 2022-0044167-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**

APR 01, 2022 12:10 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

**General Civil and Domestic Relations Case Filing Information Form**

☑ **Superior** or ☐ **State Court of** _Cobb_ _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** _04-01-2022_ <br> **MM-DD-YYYY** | **Case Number** _22102247_ |

**Plaintiff(s)**

_Nazareth Plaza, LLC_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

_GAF Materials, LLC;_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

_Lowe's Home Improvement, LLC_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _Voyles, James_     **Bar Number** _729016_     **Self-Represented** ☐

### Check one case type and, if applicable, one sub-type in one box.

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☑ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.20

ID# 2022-0044168-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**
Ann B. Harris - 56
APR 01, 2022 12:10 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

DISCLOSURE STATEMENT
CLERK OF SUPERIOR COURT

CASE NUMBER   __22102247_____

__Nazareth Plaza, LLC_____
                         Plaintiff

                         Vs.

__GAF Materials, LLC; ; Lowe's Home Improve__ment, LLC
                         Defendant

## TYPE OF ACTION

- o Divorce without Agreement Attached
- o Divorce with Agreement Attached
- o Domestic Relations
- ☑ Damages Arising out of Contract
- o Damages Arising out of Tort
- o Condemnation
- o Equity
- o Zoning – County Ordinance Violations (i.e., Injunctive Relief-Zoning)
- o Zoning Appeals (denovo)
- o Appeal, Including denovo appeal – excluding Zoning

- o URESA
- o Name Change
- o Other
- o Recusal
- o Adoption

## PREVIOUS RELATED CASES

Does this case involve substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, as any other case filed in this court (Whether pending simultaneously or not)?

- ☑ NO
- o YES – If yes, please fill out the following:

         1. Case # _____

         2. Parties _____

         3. Assigned Judge _____

         4. Is this case still pending?    o  Yes    o  No

         5. Brief description of similarities:


                                        /S/   __Voyles, James_____

                                                  Attorney or Party Filing Suit

ID# 2022-0057530-CV

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**

Ann B. Harris - 56
APR 29, 2022 10:40 AM
Superior Court

_Connie Taylor, Clerk of Superior Court_
_Cobb County, Georgia_

## AFFIDAVIT OF SERVICE

**State of Georgia**                    **County of Cobb**

Case Number: 22102247

Plaintiff:
**NAZARETH PLAZA, LLC,**

vs.

Defendant:
**GAF Materials LLC; Lowe's Home Improvement, LLC (a/k/a Lowe's Home Centers, LLC),**

Received by Kimberly Greenway Services, LLC on the 12th day of April, 2022 at 10:58 am to be served on **Lowe's Home Improvement, LLC (a/k/a, Lowe's Home Centers, LLC), c/o Corporation Service Company, Registered Agent, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.**

I, Kimberly Greenway, being duly sworn, depose and say that on the **13th day of April, 2022** at **1:27 pm, I:**

served Lowe's Home Improvement, LLC (a/k/a, Lowe's Home Centers, LLC), c/o Corporation Service Company, **Registered Agent** by personally serving **Alisha Smith, Paralegal** located at **2 Sun Court, Suite 400, Peachtree Corners, GA 30092** with: SUMMONS; COMPLAINT FOR DAMAGES; GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM; DISCLOSURE STATEMENT.

**Description** of Person Served: Age: 41, Sex: F, Race/Skin Color: Black, Height: 5'10", Weight: 130, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action.

Subscribed and Sworn to before me on the 13th day of
April, 2022 by the affiant who is personally known to me.

NOTARY PUBLIC

Kimberly Greenway
GCPS #206

**Kimberly Greenway Services, LLC**
**505 Lakeland Plaza**
**Suite 308**
**Cumming, GA 30040**
**(404) 487-6085**

Our Job Serial Number: KGS-2022003661

RICHARD BENITO
NOTARY
EXPIRES
GEORGIA
09-14-2025
PUBLIC
DAWSON COUNTY

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i

ID# 2022-0057531-CV
⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**

**Ann B. Harris - 56**
APR 29, 2022 10:40 AM
Superior Court

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## AFFIDAVIT OF SERVICE

State of Georgia                                County of Cobb

Case Number: 22102247

Plaintiff:
**NAZARETH PLAZA, LLC,**

vs.

Defendant:
**GAF Materials LLC; Lowe's Home Improvement, LLC (a/k/a Lowe's Home Centers, LLC),**

Received by Kimberly Greenway Services, LLC on the 12th day of April, 2022 at 10:58 am to be served on **GAF Materials, LLC, c/o Corporation Service Company, Registered Agent, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092**.

I, Kimberly Greenway, being duly sworn, depose and say that on the **13th day of April, 2022** at **1:27 pm, I:**

served **GAF Materials, LLC, c/o Corporation Service Company, Registered Agent** by personally serving **Alisha Smith, Paralegal** located at **2 Sun Court, Suite 400, Peachtree Corners, GA 30092** with: SUMMONS; COMPLAINT FOR DAMAGES; GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM; DISCLOSURE STATEMENT.

**Description** of Person Served: Age: 41, Sex: F, Race/Skin Color: Black, Height: 5'10", Weight: 130, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action.

Subscribed and Sworn to before me on the 13th day of
April, 2022 by the affiant who is personally known to me.

NOTARY PUBLIC

RICHARD BENITO
NOTARY
EXPIRES
**GEORGIA**
09-14-2025
PUBLIC
DAWSON COUNTY

**Kimberly Greenway**
GCPS #206

**Kimberly Greenway Services, LLC**
505 Lakeland Plaza
Suite 308
Cumming, GA 30040
(404) 487-6085

Our Job Serial Number: KGS-2022003660

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i

ID# 2022-0058607-CV
⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22102247**

Ann B. Harris - 56
MAY 02, 2022 04:03 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| NAZARETH PLAZA, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action File No. 22102247 |
| | ) |
| GAF MATERIALS LLC; and LOWE'S | ) |
| HOME IMPROVEMENT, LLC (a/k/a | ) |
| LOWE'S HOME CENTERS, LLC), | ) |
| | ) |
| Defendants. | ) |

## STIPULATION EXTENDING TIME FOR DEFENDANG GAF MATERIALS LLC TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT FOR DAMAGES

COME NOW Defendant GAF Materials LLC ("GAF") and Plaintiff Nazareth Plaza, LLC ("Plaintiff"), through counsel, and, pursuant to OCGA § 9-11-6(b), hereby stipulate that the time within which GAF may respond to, answer, or otherwise plead or move in response to Plaintiff's Complaint for Damages is extended by thirty days, up to and including June 15, 2022.

So stipulated, this the 2nd day of May, 2022.

**Prepared and stipulated to by:**

*/s/ William D. Newcomb*
William D. Newcomb
Georgia Bar No. 148484
wnewcomb@stites.com
Jeffrey C. Hoffmeyer
Georgia Bar No. 132231
jhoffmeyer@stites.com
Stites & Harbison PLLC
303 Peachtree Street NE
Suite 2800
Atlanta, Georgia 30308
Phone: 404 739 8800
Fax: 404 739 8870

*Counsel for GAF Materials LLC*

**Stipulated to by:**

*/s/ John F. Mehers (signed with express permission by JCH)*
John F. Meyers
Georgia Bar No. 503692
JMeyers Group, LLC
4414 Jett Road, NW
Atlanta, Georgia 30327
john@jmeyersgroup.com

*Counsel for Nazareth Plaza, LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date filed this document with the Court's e-filing system, which will automatically serve a copy on all counsel of record via email.

This the 2nd day of May, 2022.

*/s/ Jeffrey C. Hoffmeyer* _____

Jeffrey C. Hoffmeyer (132231)

**EXHIBIT B**

# KNIGHT | PALMER

### ATTORNEYS AT LAW

ONE MIDTOWN PLAZA
SUITE 1201
1360 PEACHTREE STREET, ATLANTA, GEORGIA 30309

P: 404.228.4822 | F: 404.228.4821
www.knightpalmerlaw.com

Nicholas T. Sears                                                                nsears@knightpalmerlaw.com

June 15, 2020

**VIA U.S. MAIL**

Standard Industries Inc.
f/k/a Building Materials Corporation of America
d/b/a GAF
c/o Prentice-Hall Corporation System
40 Technology PKWY South
#300
Norcross, Georgia 30092

Lowe's Companies, Inc.
c/o Legal Department
1000 Lowe's BLVD
Mooresville, North Carolina 28117

      Re:    **DEMAND FOR PAYMENT**
             Defective "Mineral Guard" Roofing Material for Nazareth Plaza, LLC

To Whom It May Concern:

      This firm and the undersigned represent Nazareth Plaza, LLC ("Nazareth") relating to the sale of defective roofing material to it. Please direct all further communications to this firm. The purpose of this letter is to demand payment for damages incurred by Nazareth in connection with its use of a product manufactured by Standard Industries Inc. ("GAF") and sold by Lowe's. Below is a recitation of the relevant facts and applicable law.

## RELEVANT FACTS

      On November 13, 2018, Nazareth purchased rolls of "Mineral Guard" roofing materials from the Lowe's located at 5925 Roswell Road, Sandy Springs, Georgia 30328. Nazareth paid $14,938.42 for the "Mineral Guard" roofing materials to Lowe's. The purpose of purchasing the

"Mineral Guard" roofing materials was to repair roof damage and leaks occurring at the Nazareth Plaza Shopping Center in Marietta, Georgia at 585 Franklin Gateway SE, Marietta, Georgia 30067 (the "Shopping Center").

The Shopping Center has numerous tenants including, without limitation, restaurants and event space. In 2018, the Shopping Center developed roof leaks that needed immediate attention to prevent harm and disruption to tenants. To that end, Nazareth used the roofing materials to temporarily roof trouble areas at the Shopping Center. After purchasing the roofing materials, Nazareth paid $75,000.00 in labor to third parties to install the roofing material.

Despite the extensive work to install the "Mineral Guard" around the roof, leaks returned and damaged significant portions of the Shopping Center. Tenants began to complain, and Nazareth retained a professional engineering company, O'Kon and Company, Inc. ("O'Kon"), to investigate the roofing issue and determine why the application of "Mineral Guard" had not improved the situation. Nazareth paid Mr. O'Kon $5,000.00 for his inspection. The president of O'Kon, James A. O'Kon, P.E., inspected the Shopping Center and issued his written conclusion on January 10, 2019. A true and correct copy of that conclusion is attached hereto as **Attachment 1**.

Mr. O'Kon's report explained:

> The rolls of roofing material were manufactured by the gaf materials corporation. Each was one meter in width and 9.92 meters in length.
>
> The photos from the testing procedure clearly indicate the poor quality of the material. The testing indicated seepage through the membrane of the roofing material. The roofing as installed has resulted in leaking of the Nazareth roof. The poor quality was probably due to improper storage and handling on the part of Lowes building supplies.
>
> In our opinion, this substandard material should be returned to Lowes building supplies and you are entitled to a full refund plus damages.

On January 28, 2019, counsel for Nazareth send a demand letter to Lowe's with the conclusions of this report. For reasons that are unclear, the letter did not reach the appropriate individuals at Lowe's and was emailed to Lowe's legal department on April 23, 2019. Lowe's later contacted Nazareth to send its own expert to the Shopping Center and to analyze the "Mineral Guard" roofing materials. Nazareth agreed.

In August 2019, a profession roofer, Edward Makhlouf, from Code Roofing inspected the Shopping Center. On August 23, 2019, Mr. Makhlouf issued his own letter with his conclusions. He sent that letter directly to GAF. A true and correct copy of the letter is attached hereto as **Attachment 2**. Mr. Makhlouf's letter explained:

Inspection of the roof did not reveal any open cuts or gaps in the roofing material. Therefore, it is concluded that the GAF Roll Roofing material which was installed on the Nazareth Plaza roof around the end of 2018, was defective and has apparently been permeable to rainwater.

Physical tests of the same GAF Roll Roofing material have proved water penetration through the material, and showed evidence of wetness on the undersurface of the material where water was applied under control. The result of tests were captured in photographs.

. . .

Obviously, the GAF Roll Roofing material which was installed on the Nazareth Plaza was defective. It is my recommendation to the Plaza owners that a proper claim for the material and labor costs should be filed with GAF.

Two experts now agree that the "Mineral Guard" roofing material was defective. One expert states that the fault lies with Lowe's while the other states that the fault lies with GAF. One or the both are responsible.

## APPLICABLE LAW

Nazareth has numerous cognizable claims against GAF and Lowe's. Nazareth has good reason to believe that the cause of the defective "Mineral Guard" materials was a manufacturing defect by GAF, a storage defect by Lowe's, or some combination of the two.

## A.     Manufacturing Defect

Georgia law imposes a duty of reasonable care on manufacturers that are reasonably safe for their intended and foreseeable use. *See, e.g., Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1994); O.C.G.A. § 51-1-6. The "Mineral Guard" purchased by Nazareth was not suited for its intended and foreseeable use. As set forth above, the "Mineral Guard" failed to prevent the flow of water from the roof of the Shopping Center into the building. At least two experts have examined the product and determined that it was permeable to rainwater and was of "poor quality."

Sufficient evidence exists to show that GAF failed to manufacture the "Mineral Guard" in a reasonable manner. As a result, Nazareth wasted not just the money necessary to purchase the "Mineral Guard," but also the money used to pay the labor to install the "Mineral Guard." The cost to Nazareth for the labor and materials totaled $89,938.42. Thereafter, Nazareth had to pay an expert, Mr. O'Kon, to examine the "Mineral Guard" roofing material at a cost of $5,000.00.

In addition to these costs, Nazareth has incurred costs both for out-of-pocket expenses in the amount of $6,800.00. In total, Nazareth demands payment in the amount of $101,738.42.

**B.     Implied Warranty of Fitness for Particular Purpose**

      Georgia law also imposes an implied warranty on the sale of all goods that the goods "shall be fit for such purpose." O.C.G.A. § 11-2-315. As set forth above, this implied warranty was breached in the sale of the "Mineral Guard" to Nazareth. Accordingly, Nazareth has a claim in the amount of $101,738.42 for breach of implied warranty of fitness for particular purpose.

**C.     Negligent Storage**

      In addition to the manufacturing defect set forth above, Mr. O'Kon's report indicated that the "Mineral Guard" was not properly stored by Lowe's. Failure to properly store the "Mineral Guard" constitutes negligence. Lowe's contribution to Nazareth's injury makes it jointly and severally liable with GAF for the damage to the Shopping Center and the costs incurred by Nazareth both in purchasing the "Mineral Guard" and in paying laborers to install it.

      Accordingly, demand is hereby made for payment in the amount of $101,738.42.

      Please be advised that this letter is sent in good faith to resolve this matter without the need to resort to time-consuming and costly litigation. If Nazareth should bring suit, it intends to seek recovery of all damages as well as its attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11.

      Otherwise, please remit payment to this firm for Nazareth no later than seven (7) days from the date of this letter. If you have any additional questions or concerns, please contact me at 404-228-4822 or by email at nsears@knightpalmerlaw.com.

Sincerely,

Nicholas Sears

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using the Court's electronic filing system.  I further certify that the parties were served via regular U.S. Mail addressed as follows:

John F. Meyers
JMeyers Group, LLC
john@jmeyersgroup.com

Lowe's Home Improvement, LLC
(a/k/a Lowe's Home Centers, LLC)
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

This 13th day of May, 2022.

/s/ *William D. Newcomb*
Georgia Bar No. 148484
